OPINION OF THE COURT
Stanley Parness, J.
After trial each of the above-captioned condemnation claims resulted in awards as follows: 204 West 34th Street Corporation (Dave’s Tavern, index No. 44844/91): $911,264; Trustees, Estate of Alfred Kohlberg (index No. 44604/91): $16,025,000; 206 West 43rd Street Hotel Corp. (Hotel Strand, index No. 44607/91): $2,034,563; Waybro Theatre Corporation (Al’s Deli, index No. 44608/91): $840,508; 52nd Street Designee Corporation (Food Court, index No. 44620/91): $5,750,108. What remains is the rate of prejudgment interest to be awarded, an issue common to all of the captioned matters.
*774 Pursuant to McKinney’s Unconsolidated Laws of NY § 6254 (1) (New York State Urban Development Corporation Act § 4 [l]; L 1968, ch 174, § 1, as amended), ESD, as a public benefit corporation, is, under McKinney’s Unconsolidated Laws of NY § 2501 (L 1939, ch 585), obliged to pay interest on any judgment or award in an amount that “shall not exceed nine percentum per annum”.
Under the Fifth Amendment to the United States Constitution, government must pay just compensation for private property appropriated for public use. “ ‘Just compensation’ * * * means in most cases the fair market value of the property on the date it is appropriated” (Kirby Forest Indus. v United States, 467 US 1, 10). “But if disbursement of the award is delayed, the owner is entitled to interest thereon sufficient to ensure that he is placed in as good a position pecuniarily as he would have occupied if the payment had coincided with the appropriation [citations omitted]” (supra, at 10-11). The issue remains however as to what rate of interest would “ensure * * * as good a position pecuniarily”.
The New York Court of Appeals had held that:
“The property owner is entitled to receive a fair return for the deprivation of the use of the property or the money equivalent of that use [citations omitted]. Moreover, because the ascertainment of just compensation is a judicial question, the amount of interest to be paid as an additional component of such compensation is also a matter for judicial determination * * * The Legislature may fix a fair or prima facie measure of the proper interest rate in the first instance, and it has done so in section 3-a of the General Municipal Law, but while that legislatively fixed rate is presumptively reasonable, it is not determinative of the issue. The claimant may introduce relevant evidence of prevailing market rates to rebut the statutory presumption of reasonableness and demonstrate that some higher rate must be paid to afford him just compensation.
“We have frequently rejected challenges to the applicable statutory rate of interest in the past because claimants failed to demonstrate that the rate was so ‘unreasonably low’ that it deprived them of just compensation” (Matter of City of New York [Brookfield], 58 NY2d 532, 537).
Since the cited statute applicable herein permits “that interest shall not exceed nine percentum per annum” (McKinney’s Uncons Laws of NY § 2501), ESD urges the court to set interest at a lesser 6% rate citing the recent case of Rodriguez v New York City Hous. Auth. (91 NY2d 76) as authority for the court to do so. In that case the Court (at 79), construing a similar not-to-exceed 9% interest statute, held that the “shall not *775 exceed” language permitted discretion to the Court to find interest at less than 9% in appropriate circumstances.
In support of a lower 6% interest rate ESD offers anecdotal history during the interest period herein of the decline in the Federal funds rate, at which banks charge other banks for loans; the prime rate, at which major banks lend money to their most favored customers; and the rate on United States Government obligations: e.g., three-month Treasury Bills, six-month Treasury Bills, and the rate at which ESD earned interest in its own bank account. It is generally supportive of ESD’s allegations concerning the trend in interest rates.
Claimants had their business property “involuntarily converted into an extremely illiquid claim against the [Government]” (Miller v United States, 620 F2d 812, 839). Thus, the flaw in ESD’s argument is that claimants could not voluntarily invest in the securities urged in ESD’s supporting affidavits or, for that matter, in any others. Accordingly, “[t]he Government, not the unwilling condemnee, should be the one to bear the risk of any fluctuations in the interest rates” after the date of vesting (supra).
Further, in the intervening years between the taking and the present, the universe of voluntary investment choices was vast. If one sought the advice of 14 major Wall Street brokerage houses, and averaged their recommended asset allocation blends over the last five years, the results would be as follows: investment in stocks — 60% of capital; investment in bonds— 3%; investment in cash — 8%; all resulting in an average rate of return of 71% (Wall St J, Nov. 5, 1997, at Cl, col 3).
In calculating the value for the property of Food Court, captioned above, claimant’s appraiser developed a capitalization rate of 9% for determining the capitalized value of the property. If the claimant had been in possession of the full compensation, at that time, he might have chosen to invest for a similar return in “Triple A” rated corporate bonds, at 9.37% or “Triple B” corporate bonds at 10.21% interest. Similarly, ESD’s appraiser developed a capitalization rate for the same claim at 91/4% and, in the process considered competing investments open to all, including “Triple A” corporate bonds at a rate of 9.37% return, and 10- to 23-year term mortgages at more than 10%.
Considering the range of investment choices the claimants were deprived of, by reason of not having use of their compensation due to the involuntary appropriation of their property, a 9% rate of interest on the unpaid portion is neither excessive, *776 an unreasonable burden on the public, nor unjustly enriching of the claimants. While the rate of return should be what a prudent investor would receive on investments, it is not prudent to accept the lowest possible return for the least possible risk, if one can receive a better return for a reasonable amount of risk (United States v 429.59 Acres of Land, 612 F2d 459, 464-465). In sum, BSD has failed to persuade the court that the 9% rate of interest, set forth by statute, is unreasonable or otherwise overcome the presumption as to its propriety.
Accordingly, the court determines that the rate of interest to be paid on the unpaid portions of the final awards in the above-captioned matters shall be 9% per annum until date of payment and judgments shall be entered consistent with this determination.